IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:19-CV-105-TBR

**DEVAN JONES and all others**                                                      **PLAINTIFF**
**similarly situated,**

**V.**

**H&J RESTAURANTS, LLC d/b/a**                                           **DEFENDANT**
**TOKYO HIBACHI,**

**MEMORANDUM OPINION & ORDER**

### I.  Background and Procedural Posture

Plaintiff Devan Jones initiated the instant action seeking allegedly unpaid wages from employer H&J Restaurants, LLC under the Fair Labor Standards Act ("FLSA") and the Kentucky Wages an Hours Act ("KWHA"). (DN 1). Plaintiff asserted the FLSA claims on her own behalf and on behalf of a putative collective class. *Id*. Plaintiff asserted the KWHA state law claims on her own behalf and on behalf of a putative Rule 23 class. *Id*. Thereafter, Plaintiff moved the Court to conditionally certify a collective class with respect to the FLSA claims pursuant to 29 U.S.C. § 216(b). (DN 13). The Court granted conditional certification of the collective class, defining the class as "[a]ll current and former servers employed by Defendant at its Tokyo Hibachi Restaurant in Paducah, Kentucky any time since 7/22/2016." (DN 22). Plaintiff's counsel notified the Court and opposing counsel that Notice and Consent Forms were mailed to potential opt-in plaintiffs on February 25, 2020. (DN 28). Plaintiff also informed that in addition to the named plaintiff, 40 individuals opted in to the collective class. (DN 58-1 at 2).

After "significant formal discovery," the parties jointly moved the Court to approve a settlement agreement reached on the conditionally certified collective class's FLSA claims. (DN

1

58). Additionally, Plaintiff moved to voluntarily dismiss the state law claims pertinent to the putative Rule 23 class. *Id*. Although Plaintiff filed a motion to certify the putative Rule 23 class, the joint motion for approval of settlement and Plaintiff's unopposed motion for voluntary dismissal of the state law claims were filed prior to a ruling on the Rule 23 class certification. Therefore, the parties want to dispose of the case without a class action on the state law claims. The Court must now decide whether to approve the settlement and whether to grant voluntary dismissal of the putative Rule 23 class's state law claims. These issues are addressed in turn.

## II. The FLSA Collective Action Settlement

Claims for back wages under the FLSA may be settled upon district court approval. *O'Bryant v. ABC Phones of North Carolina, Inc.*, No. 2:19-cv-02378, 2020 WL 4493157 at *6 (W.D. Tenn. Aug. 4, 2020) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)). "Pursuant [to] the FLSA's statutory requirements, in an FLSA collective action case, a court will grant a motion for settlement approval only after finding that: (1) the opt-in plaintiffs are 'similarly situated'; (2) the opt-in plaintiffs have properly filed written consents with the court; and (3) the settlement is 'a fair and reasonable resolution of a bona fide dispute.'" *O'Bryant*, 2020 WL 4493157 at *8 (first citing 29 U.S.C. § 216(b); then citing *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006); and then citing *Lynn's*, 679 F.2d at 1353)). The Court addresses each of these requirements below.

### a. First Requirement: Opt-in Plaintiffs are Similarly Situated

#### i. Legal Standards

Employees may bring collective actions against employers under the FLSA on their own behalf or on behalf of "themselves and other employees similarly situated." 29 U.S.C. § 216(b). Courts must evaluate whether claimants are similarly situated both in deciding whether to allow

an FLSA collective action to proceed at the outset, and, if the parties later seek approval of a settlement agreement, in deciding whether to allow a collective action to settle. *O'Bryant*, 2020 WL 4493157 at \*5, \*8. Thus, under the FLSA, to properly proceed as a collective class, or to properly settle as a collective class, the district court must find—in addition to other factors—that the named plaintiffs and the potential or actual opt-in plaintiffs are similarly situated. *Id.*

This Court made the threshold determination that the collective class claimants were similarly situated in conditionally certifying the collective class. (DN 22). However, this initial certification was only the first step in a two-step certification process used by the Sixth Circuit in certifying collective actions under the FLSA. *See, e.g., Monroe v. FTS USA, LLC*, 860 F.3d 389, 397 (6th Cir. 2017) (citing *Comer*, 454 F.3d at 546, 547) ("Courts typically bifurcate certification of FLSA collective action cases. At the notice stage, conditional certification may be given along with judicial authorization to notify similarly situated employees of the action . . . Once discovery has concluded, the district court—with more information on which to base its decision and thus under a more exacting standard—looks more closely at whether the members of the class are similarly situated."); *see also White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012) (citing *Comer*, 454 F.3d at 546) ("District courts determine whether plaintiffs are similarly situated in a two-step process, the first at the beginning of discovery and the second after all class plaintiffs have decided whether to opt-in and discovery has concluded."). Importantly, this action did not reach the second step of the certification process before the parties sought approval of their settlement agreement. Only the first, conditional certification has been approved. As stated in *O'Bryant*, "[t]he burden in deciding whether members are 'similarly situated' at this initial stage can be met 'on a modest factual showing,' and the court should use 'a fairly lenient standard that typically results in . . . certification.'" 2020 WL 4493157 at \*6 (citing *Comer*, 454

3

F.3d at 547). Thus, the question then arises whether the modest standard used to determine whether collective class claimants are similarly situated during the conditional certification stage is also sufficient to find that the collective class claimants are similarly situated for approval of a settlement agreement. That is, to properly approve of a collective class's settlement agreement, must the court evaluate whether plaintiffs are similarly situated under a more exacting standard than the standard used for conditional certification?

It does not appear that the Sixth Circuit has squarely addressed this question or expressly required that claimants show, for the purposes of a settlement approval, that they are similarly situated under a higher standard than what is required for conditional certification. However, some courts *have* required that the claimants demonstrate they are similarly situated under the second-step, final certification standard in order to approve of a collective class settlement. *See Carter v. Anderson Merchandisers, LP*, Nos. EDCV 08-00025-VAP (OPx), EDCV 09-0216-VAP (OPx), 2010 WL 144067, at *3 (C.D. Cal. Jan. 7, 2010) (citations omitted) ("Where the parties reach a settlement after a court has conditionally certified a collective class, the court still 'must make some final class certification finding before approving a collective action settlement.'"); *see also Ruddell v. Manfre*, No. 3:14-cv-873-J-34MCR, 2015 WL 7252947, at *1 (M.D. Fla. Nov. 17, 2015) (citations omitted) ("Prior to approving a class settlement under the FLSA, the Court must determine whether final certification is appropriate."); *but see Prena v. BMO Fin. Corp.*, No. 15 C 09175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) (finding that a two-step certification process is only needed to approve a settlement agreement in a collective action where there is "a concern that the reasonableness of the settlement is a close question"). This Court does not and need not decide today the question of whether the lenient conditional certification similarly situated standard or the stricter final certification similarly situated standard must be shown to

approve of a settlement agreement in a collective action. As the following discussion illustrates, even if only the lenient similarly situated standard is necessary to approve of a conditionally certified collective class's settlement agreement, the claimants here are similarly situated under the final certification stricter standard as well.

Although the FLSA fails to define "similarly situated," the Sixth Circuit has articulated three factors a district court should consider in deciding whether the collective action claimants are indeed similarly situated for final certification. *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009); *O'Bryant*, 2020 WL 4493157 at *5. A court may find that the claimants are similarly situated after considering "factual and employment settings of the individual plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, and the degree of fairness and procedural impact of certifying the action as a collective action." *O'Bryant*, 2020 WL 4493157 at *5 (first quoting *O'Brien*, 575 F.3d at 584; then citing *Monroe v. FTS USA, LLC*, 815 F.3d 1000, 1011 (6th Cir. 2016); and then citing *Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 672 (6th Cir. 2012)). Essentially, the district court decides "'whether the plaintiffs should be permitted to bring their claims of liability and damages as a group based on representative, rather than personal, evidence.'" *Id.* (quoting *Pierce v. Wyndham Vacation Resorts, Inc.*, 922 F.3d 741, 745 (6th Cir. 2019)).

    **ii.**   **Discussion**

As stated, this Court earlier determined that the plaintiffs were similarly situated for purposes of conditional certification. (DN 22). In so determining, the Court looked to Plaintiff's declarations, motion for conditional certification, and exhibits filed with the court, including opt-in plaintiffs' notices of consent, and found "a class of employees (1) in the same job; (2) at the same restaurant; (3) during the same time-period; (4) under the same management; and (5) who

were paid in the same way." (DN 22 at 6). The Court now looks to the three non-exhaustive factors considered in a final certification analysis.

The first non-exhaustive factor in a similarly situated evaluation at the final certification stage considers the factual and employment settings of the individual plaintiffs. *O'Bryant*, 2020 WL 4493157 at *5 (citations omitted). Factual and employment settings may include things like job duties, work location, supervision, and pay. *Wilks v. Pep Boys*, No. 3:02-0837, 2006 WL 2821700 at *3 (M.D. Tenn. Sept. 26, 2006). Another thing courts often consider in examining claimants' factual and employment settings is whether all collective claimants were "impacted by a 'single decision, policy, or plan.'" *Id*. (citing *Moss v. Crawford & Co.*, 201 F.R.D. 398, 409-10 (W.D. Pa. 2000)).

As to the claimants' job duties, location, supervision, and pay, the Court finds that the claimants are similarly situated. In her Complaint, Motion for Conditional Class Certification, and Supplemental Brief in Support of Plaintiff's Motion for Conditional Class Certification, Plaintiff consistently alleged that she and other individuals who worked at Tokyo Hibachi in Paducah, Kentucky were subject to the same unlawful policies while working in in the restaurant. (DN 1, 13, 21). Four affidavits filed by various plaintiffs also alleged that they were subject to the same violative policies while working in the same positions, or some variation of the same positions, at Tokyo Hibachi. (DN 13, 18, 19). In its Response in Opposition to Motion for Conditional Class Certification, Defendant alleged that the claimants did not share the same job duties, work location, supervision, or pay. (DN 17). There, Defendant maintained that the plaintiffs' duties, location, supervision, and pay did not amount to the same factual and employment settings because "payment records show some employees engaged in different roles with different payment structures depending on their role at the time . . . [and] employees' roles may change from week

to week, day to day, or shift to shift, between server and many of the non-server positions, for which they were paid under a different structure." (DN 17 at 6-7). Defendant's contentions are unconvincing. The fact that plaintiffs' exact job roles or titles changed by week, day, or shift does not show that plaintiffs are not similarly situated with respect to general duties, work location, job supervision, and pay policies. Each plaintiff opted in to the collective class as a current or former server of Tokyo Hibachi subject to the same violative payment practices. The information provided to the Court is enough to show plaintiffs' duties, location, supervision, and pay as similarly situated, even if not identically situated.

As to showing that the claimants were impacted by a single decision, policy, or plan, the Plaintiff again submitted in her Complaint and Motion for Conditional Class Certification, in addition to other filings, that Defendant violated the claimants' rights under the FLSA and the KWHA by requiring tip-sharing, paying server's wages for non-tip producing work, failing to pay minimum wage, and requiring work off the clock. (DN 1 at 3-4, 13-3 at 2). The affidavits referenced above also alleged these violations. (DN 13, 18, 19). In Defendant's Response in Opposition to Motion for Conditional Class Certification, Defendant essentially argued that it did not violate the FLSA, and even if it had, named plaintiff Jones is not similarly situated such that a collective action would be appropriate. (DN 17 at 11-13). Even if Defendant could ultimately prove it is correct in arguing that it did not violate the substantive law, the claimants nonetheless alleged that they were subject to the same violative employment practices requisite to show they were similarly situated in their factual and employment settings.

The second non-exhaustive factor in a similarly situated evaluation at the final certification stage requires consideration of the different defenses to which plaintiffs may be subject on an individual basis. *O'Bryant*, 2020 WL 4493157 at *5 (citations omitted). Though neither party has

7

expressly addressed this issue to date, Defendant claimed in its Response in Opposition to Motion for Conditional Class Certification that "some employees engaged in different roles with different payment structures depending on their role at the time." (DN 17 at 6). Defendant's apparent point in raising this issue was to establish that the claimants were not similarly situated, as their job duties and pay were not always the same. To the extent this assertion can be construed as argument that the named plaintiff and the claimants who have opted in may be subject to different defenses on an individual basis, that argument is unpersuasive. As with the claimants factual and employment settings, the court cannot find that the plaintiffs are not similarly situated due to any individual defenses. The fact remains that the claimants opted in to the collective as Tokyo Hibachi servers subject to the same FLSA violations.

The final non-exhaustive factor in a similarly situated evaluation at the final certification stage considers the degree of fairness and procedural impact of certifying the action as a collective action. *O'Bryant*, 2020 WL 4493157 at *5 (citations omitted). As stated by the Sixth Circuit in *Monroe*, cases will "satisf[y] the policy behind FLSA collective actions and Congress's remedial intent by consolidating many small, related claims of employees for which proceeding individually would be too costly to be practical." 860 F.3d 389, 405 (6th Cir. 2017). The court in *Monroe* found that because the claimants "allege[d] a common, FLSA-violating policy, 'the judicial system benefits by efficient resolution in one proceeding of common issues of law and fact.'" *Id.* (citing *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989)). This Court finds the same to be true of the instant action. The named plaintiff and each of the opt-in plaintiffs alleged common FLSA-violating policies, and the judicial system will benefit from a common resolution.

In sum, "differences among the plaintiffs do not outweigh the similarities in the practices to which they claim to have been subjected." *Pep Boys*, 2006 WL 2821700 at *6 (citations

omitted). After reviewing our conditional certification and considering each of the factors above, the Court finds that the plaintiffs are similarly situated such that they satisfy the first requirement for approval of a collective class settlement.

### b. Second Requirement: Opt-in Plaintiffs' Written Consents

#### i. Legal Standards

In addition to finding the claimants similarly situated, the Court must also ensure that the claimants have filed written consents with the court. *O'Bryant*, 2020 WL 4493157 at *8, *10-11 (citations omitted). "The FLSA requires that, to opt into a collective action, an individual must file a written consent with the court." *Id*. at *10 (citing *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013)). While merely endorsing a check after a settlement agreement has been reached will not constitute opting in, filing an express, written consent as directed by the court is generally enough. *Id*. at *10-11 (collecting cases).

#### ii. Discussion

The parties stated that "[b]ecause members of an FLSA collective must consent to join the suit and agree to be bound by any settlement reached by the named plaintiffs and their counsel, preliminary notice of the settlement and an opportunity to object are not required." (DN 58-1 at 4-5) (citing *Moore v. Ackerman Inv. Co.*, No. C 07-3058-MWB, 2009 WL 2848858 at *1 (N.D. Iowa Sept. 1, 2009)). The parties also asserted that "[w]orkers who have not joined this collective action case are not bound by the § 216(b) settlement." (first citing *Moore*, 2009 WL 2848858 at *1; and then citing 29 U.S.C. § 216(b)). The parties are correct on these points.

This Court approved the Plaintiff's proposed Notice and Consent Form for distribution in its text order entered on February 1, 2020. (DN 22). The approved form, titled, "Notice of Pending Fair Labor Standards Act Lawsuit," notified opt-in plaintiffs, in part, "[i]f you choose to join this

lawsuit: (i) you will be bound by any ruling, judgment, or settlement, whether favorable or unfavorable; and (ii) you designate Plaintiff and their attorneys as your agents to make binding decisions on your behalf concerning the lawsuit." (DN 13-1 at 2). The parties noted in their joint motion that 41 claimants are eligible to receive payment under the settlement agreement. (DN 58-1 at 2). However, the agreement itself states, "forty-three (43) servers, including Named Plaintiff, joined this lawsuit by filing a claim to assert their claims under the [FLSA] and Kentucky law." (DN 58-2 at 1). The parties also listed 43 individuals as receiving payments in Exhibit A to the settlement agreement. (DN 58-2 at 6). It does appear that 43 individuals have filed written notices of consent, but the Court is concerned that the parties are not in agreement about who is included in the settlement. The parties need to clarify whether there are 41 or 43 plaintiffs in the settlement, briefly explain why it is proper to include the individuals included, and if relevant, briefly explain why it is proper to exclude any individuals excluded. Because of this issue, and others addressed below, the Court cannot approve of the settlement agreement as it stands.

    **c. Third Requirement: The Settlement is a Fair and Reasonable Resolution of a Bona Fide Dispute**

        **i. Legal Standards**

To approve a collective class's settlement agreement under the FLSA, the court must ensure the agreement is a fair and reasonable resolution of a bona fide dispute. *O'Bryant*, 2020 WL 4493157 at *8 (citations omitted). "'A bona fide dispute exists when there are legitimate questions about "the existence and extent of defendant's FLSA liability."'" *Id*. at *7 (quoting *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F.Supp.3d 1164, 1172 (S.D. Cal. 2016)). "Typically, Courts regard the adversarial nature of a litigated FLSA case to be an adequate guarantor of fairness." *Kauffman v. U-Haul Int'l, Inc.*, No. 5:16-cv-04580, 2019 WL 1785453, at *2 (E.D. Pa.

Apr. 24, 2019). Simply, the settlement must represent a fair compromise of genuinely disputed wage-related claims. *O'Bryant*, 2020 WL 4493157 at *7 (citing *Alvarez v. BI Inc.*, No. 16-2705. 2020 WL 1694294, at *4 (E.D. Pa. Apr. 6, 2020)).

Courts in this Circuit have assessed whether a settlement agreement in a collective action is fair and reasonable using the same factors applied in assessing whether a settlement agreement in a Rule 23 class action is fair and reasonable. *See O'Bryant*, 2020 WL 4493157 at *7; *see also Mitcham v. Intrepid U.S.A., Inc.*, No. 3:17-CV-703-CHB, 2019 WL 5496023, at *2 (W.D. Ky. May 28, 2019). Those factors include:

> (1) the risk of fraud or collusion, (2) the complexity, expense and likely duration of the litigation, (3) the amount of discovery engaged in by the parties, (4) the likelihood of success on the merits, (5) the opinions of class counsel and class representatives, (6) the reaction of absent class members, and (7) the public interest.

*O'Bryant*, 2020 WL 4493157 at *7 (citing *Does 1-2 v. Déjà Vu Services, Inc.*, 925 F.3d 886, 894-95 (6th Cir. 2019)). Like the court in *O'Bryant*, this Court also considers the claimants' potential recovery, the settlement agreement's release provisions, and attorneys' fees. *Id.* at *13-17. Lastly, the Court considers the propriety of designating a cy pres beneficiary.

    **ii.   Discussion**

First, the Court considers the fair and reasonable factors listed in *O'Bryant*. The first factor is the risk of fraud or collusion. *O'Bryant*, 2020 WL 4493157 at *7. The Court has no reason to suspect fraud or collusion. The agreement here was reached after negotiation overseen by a private mediator, and both parties were represented by counsel. (DN 58-1 at 5).

As to the complexity, expense, and likely duration of the litigation, the parties have submitted statements asserting that continued litigation will be burdensome. (DN 58-1 at 5) ("In light of the considerable risk, cost, and uncertainty of continued litigation, the Parties submit that their Settlement Agreement should be approved by the Court as fair and reasonable."); (DN 58-1

11

at 8) ("[T]he complexity of the procedural and factual issues of these cases, the inability of Plaintiffs' counsel to handle other matters due to the total hours consumed by these cases, and the degree of success in terms of the settlement, justify the requested fee award."). Considering the parties' procedural burdens in dealing with a collective class and the potential that claimants' already limited recovery amounts could be further diminished, the Court agrees that the risk, cost, and uncertainty of continued litigation warrants timely resolution of the claims in the interests of fairness and reasonability.

The third factor is the amount of discovery the parties have conducted. *O'Bryant*, 2020 WL 4493157 at *7. On this matter, the Court is satisfied that the parties have conducted enough discovery to reach a fair and reasonable settlement on the FLSA claims. The parties have conducted multiple depositions, the Defendant "produced the pay, time, and tip data for all . . . Plaintiffs," and the parties submit that they entered mediation "[a]rmed with significant discovery." (DN 58-1 at 5). Given the relatively small number of claimants and the relative simplicity of the claims, the depth of discovery is adequate for fair and reasonable settlement.

The Court now considers together the fourth and fifth factors—likelihood of success on the merits and opinions of class counsel and class representatives. Considering the submitted filings, it appears the claimants have a fair likelihood of success on the merits. However, in balancing the claimants' chance of success with class counsel's willingness to settle, the parties' seemingly careful valuation of each individual plaintiff's allocated recovery, and the judicial economy promoted by settlement, these factors weigh in favor of finding that the settlement agreement is fair and reasonable.

Absent class members' reactions are not relevant here. As such, the Court proceeds to the final factor typically considered in class action approval analysis—the public interest. Courts in

the Sixth Circuit consider that settlement is often in the public interest because it puts an end to what are sometimes complex and unpredictable cases and because settlement promotes judicial economy. *Does 1-2*, 925 F.3d at 899; *Ware v. CKF Enters., Inc.*, No. 5:19-183-DCR, 2020 WL 2441415, at *14 (E.D. Ky. May 12, 2020). However, settlement may conflict with the public interest where "full enforcement of the FLSA" would ensure that employers comply with the statute. *Ware,* 2020 WL 2441415, at *14. On balance, the public interest factor weighs against settlement approval, primarily because of the confidentiality provision in the settlement agreement. The agreement states, in relevant part, "Named Plaintiff agrees that Company may request the Court maintain this settlement agreement as confidential. Named Plaintiff agrees to not oppose such a request." (DN 58-2 at 4). This provision is impermissible as contrary to the public interest. "'There is broad consensus that FLSA settlement agreements should not be kept confidential' because 'compelled silence unreasonably frustrates implementation of the "private-public" rights granted by the FLSA and thwarts Congress's intent to ensure widespread compliance with the statute.'" *Cazeau v. TPUSA*, Inc., No. 2:18-cv-00321-RJS-CMR, 2020 WL 3605652, *6-7 (D. Utah July 2, 2020) (citations omitted). The confidentiality provision in the settlement agreement here would aggravate full enforcement of the FLSA. However, the public interest is served by settlement in this case. Therefore, in absence of a confidentiality provision, a settlement in this case will satisfy the public interest factor.

    Having considered the Rule 23 class action settlement factors, the Court turns to the settlement agreement's release provisions, the claimants' potential recovery, attorneys' fees, and the cy pres beneficiary designation. "A settlement agreement that includes an overbroad release provision may be found unfair and unreasonable." *O'Bryant*, 2020 WL 4493157 at *14 (citing *Selk*, 159 F.Supp.3d at 1178). The release provisions in the settlement agreement here are

13

overbroad. The agreement binds opt-in plaintiffs to an acknowledgement that but for the settlement, "they would not be entitled to receive this monetary consideration or other consideration provided for in this agreement." (DN 58-2 at 3). The agreement also provides that the plaintiffs "further agree that the consideration stated herein fully compensates them for any and all alleged back wages, overtimes wages, damages, attorneys' fees, and costs, and that they neither seek nor are entitled to any further [recovery]." *Id*. Next, the agreement provides that the plaintiffs agree to "release, remise, and forever discharge" the defendant of any claims arising "under the Fair Labor Standards Act and under Kentucky law for payment of hours worked up to the date of this Agreement." *Id*. These provisions appear to be overbroad. The settlement agreement is a purported settlement of the FLSA collective action's claims, not a settlement agreement of the state law claims. Moreover, the opt-in plaintiffs agreed to be bound by a settlement entered on FLSA claims—not the Kentucky law claims. (DN 13-1). It goes beyond the scope of plaintiff counsel's authority to settle the state law claims on behalf of parties who have agreed to be bound by a settlement only on federal law claims. The Court recognizes the Sixth Circuit has stated that "'the question is not whether the definition of the claim in the complaint and the definition of the claim in the release overlap perfectly; it is whether the released claims share a "factual predicate" with the claims pled in the complaint.'" *Does 1-2*, 925 F.3d at 900 (quoting *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 349 (6th Cir. 2009)). However, *Does 1-2* was a case involving a hybrid class and collective action settlement. *Does 1-2*, 925 F.3d at 891. At issue here is a collective action settlement alone. The Court cannot approve of the settlement agreement releasing Defendant of liability to claimants for unrecovered losses under state law because the settlement agreement is a collective action settlement aimed at settling amounts recoverable under the FLSA. If claimants are entitled to any separate or additional recovery pursuant to state law

wage and hour claims, it appears to the Court that it is unfair and unreasonable to hinder claimants' rights to later raise those claims. In other words, to the extent the federal and state law claims do not overlap, the Court does not now find that the settlement agreement can require the opt-in plaintiffs to release those state law claims absent plaintiffs' express consent. The Court understands that plaintiffs may not be entitled to any separate or additional recovery based on the same facts grounding the FLSA claims, but the parties have not made this sufficiently clear. Accordingly, the Court requests further briefing on this issue should the parties move for approval of a revised settlement agreement.

Another aspect of the settlement that the Court considers is the reasonableness of the settlement amount, measured by plaintiffs' estimated potential recovery. See *O'Bryant*, 2020 WL 4493157 at *13. In her Complaint, Plaintiff alleged that Defendant forfeited the right to satisfy its obligation to pay servers an hourly wage lower than minimum wage when Defendant (a) required servers to share their tips with other employees, (b) required servers to spend more than 20% of their shifts performing non-tip producing work, and (c) required servers to share their tips with the defendant-employer even when the servers' tips, in addition to their hourly wage, did not reach minimum wage. (DN-1 at 6-12). As the Court now understands the claims, named plaintiff Jones and the opt-ins were not paid an hourly minimum wage of $7.25 for hours worked within the 40-hour work week, nor an hourly minimum wage of $10.88 for overtime hours, even though they were entitled to such wages, separate from any tips. (DN 58-1 at 3) ("Plaintiffs submit that . . . servers who joined this case would be entitled to a $7.25 minimum wage for all hours worked, essentially awarding them back pay of approximately $5.10 for all hours in which they were paid $2.15 as servers."). The parties provided a list of each plaintiff's individual recovery amount in Exhibit A to the settlement agreement. (DN 58-2 at 6). Further, in the joint motion, the parties

15

stated that "the formula used by the Plaintiffs' counsel to calculate each Opt-In Plaintiffs' damages was the result of significant discovery in this case and reflects a data-driven compromise of the disputed issues in the case." (DN 58-1 at 6). The motion goes on to state that "the $102,000 owed to Plaintiffs represents nearly their full potential wage recovery had this matter proceed[ed] to judgment and the Plaintiffs prevailed . . . $102,000 represents 91.5% of the full amount of wages Plaintiffs claim they would be owed based on the tip credit violations." *Id*. Considering this information, the Court is satisfied that the parties have carefully estimated each plaintiff's recovery and reached a reasonable settlement amount relative to plaintiffs' total recovery potential. The Court now turns to attorneys' fees.

"When a proposed settlement of FLSA claims includes the payment of attorneys' fees, the court must assess the reasonableness of the fee award." *O'Bryant*, 2020 WL 4493157 at *15 (first citing *Hawkins v. Accurate Nursing Servs., Inc.*, 2020 WL 1031530, at *1 (N.D. Ohio Mar. 3, 2020); and then citing 29 U.S.C. § 216(b)). A district court may consider a variety of factors in determining the reasonableness of the fee award, including the value rendered to the collective class, the complexity of litigation, and the value of plaintiff counsel's services on an hourly basis. *Id*. Courts may employ the lodestar method or the percentage-of-recovery method in determining the reasonableness of attorneys' fees. *Id*. (first citing *Smith v. Serv. Master Corp*, 592 F. App'x 363, 369 (6th Cir. 2014); then citing *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 515-16 (6th Cir. 1993); and then citing *Brandenburg v. Cousin Vinny's Pizza, LLC*, 2019 WL 6310376, at *5 (S.D. Ohio Nov. 25, 2019)). Further, as recognized in the joint motion, "[t]he party seeking attorneys' fees has the burden to prove that its request for fees is reasonable by 'submitting evidence supporting the hours worked and the rates claimed.'" (DN 58-1 at 7) (citing *Consumers Produce, Inc. v. R. Family Market*, No. 4:08-cv-70, 2009 WL 2351642, at *2 (N.D. Ohio July 28,

16

2009)). Here, the parties agreed to $55,000 in attorneys' fees and expenses, $43,790.35 of which are fees and $11,209.65 of which are expenses. (DN 58-1 at 8). Plaintiff's counsel stated that his billing records indicate a total of $86,064.50 in attorneys' fees and a total of $11,209.65 in expenses. (DN 58-3 at 2). Thus, under the settlement agreement, plaintiff's counsel will receive about 50% of actual fees supposedly incurred. Although $43,790.35 in attorneys' fees represents less than 30% of the gross settlement amount, $43,790.35 in attorneys' fees also represents about 43% of the settlement amount to be paid to the plaintiffs in total. In his declaration, plaintiff's counsel David W. Garrison pointed the court to *Mitcham*, contending that this Court formerly found his firm's hourly rate structure to be reasonable as "consistent with market rates throughout Kentucky and Tennessee." 2019 WL 5496023, at *4. While the rate structure might be reasonable, like in *Mitcham*, the Court is concerned that "counsel provides the Court with no hours worked, no time sheets, and no other evidence, save the declarations of Plaintiffs' attorneys, who attest that they've done considerable work during discovery to get this case towards resolution." *Id*. The Court only has only been provided evidence of the rates claimed. Evidence supporting hours worked is inadequate. The Court can employ the percentage-of-recovery method in determining the reasonableness of attorneys' fees, but without more specific details about the hours worked by each of the firm's attorneys and staff members who contributed to the case, the Court has no way to measure reasonableness under the lodestar method. Considering the relatively small amount the collective class is recovering and the straightforward nature of the claims, the lodestar method would be the best method to ensure fairness to the plaintiffs. The Court cannot approve of the attorneys' fees award without further detail from plaintiff's counsel regarding hours worked. Therefore, the Court requests more detailed billing information if a revised settlement agreement is submitted for approval.

As the parties recognize, cy pres beneficiaries are typically used in class action settlements or hybrid settlements of class and collective actions. (DN 58-1 at 10, 11). There is little authority approving of a cy pres beneficiary in settlement of a collective action alone. However, the Court recognizes that "[c]ourts have generally looked favorably on distributions to charities that offer services that are related to the plaintiffs of a class action." (DN 58-1 at 10) (citing *Lessard v. City of Allen Park*, 470 F. Supp. 2d 781, 783 (E.D. Mich. 2007)). The parties state that the designated beneficiary, Kentucky Legal Aid, "is the only free civil legal services provider in South-Western Kentucky . . . and specializes in providing top-tier legal assistance to people living in poverty, the disabled, and senior citizens." (DN 58-1 at 11). The Court agrees that Kentucky Legal Aid is an appropriate cy pres recipient. If unclaimed funds remain at the end of the settlement period, Kentucky Legal Aid may be distributed the remaining funds.

**d. Summary**

As stated above, the Court can only approve of a settlement in this collective action after finding that: (1) the opt-in plaintiffs are similarly situated, (2) the opt-in plaintiffs have properly filed written consents with the court, and (3) the settlement is a fair and reasonable resolution of a bona fide dispute. *O'Bryant*, 2020 WL 4493157 at *8. Although the first requirement is met, the parties have not satisfied the second and third requirements for the reasons stated above. The Court cannot cure the settlement agreement's defects by simply striking its problematic provisions. *O'Bryant*, 2020 WL 4493157 at *8 (quoting *Smothers v. NorthStar Alarm Servs., LLC*, No. 2:17-cv-00548-KJM-KJN, 2019 WL 280294 at *9 (E.D. Cal. Jan. 1, 2019) ("A court does not have the authority to delete, modify, or substitute certain provisions of a settlement agreement, but rather, the settlement agreement 'must stand or fall in its entirety.'")). The parties must correct the

problems the Court has addressed and submit a revised settlement agreement for approval if the parties still wish to settle.

### III. Voluntary Dismissal of the Rule 23 Claims

This Court is not willing to take up the issue of voluntary dismissal of the Rule 23 state law claims until further conferring with the parties about issues with the settlement agreement. Plaintiff's motion for voluntary dismissal of the Rule 23 claims is stayed, pending resolution of settlement agreement approval.

### IV. Conclusion

For the foregoing reasons, **IT IS HEREBY ORDERED** that the parties' Motion for Settlement Approval (DN 58) is **DENIED**, and a decision on plaintiff's Motion for Voluntary Dismissal of the Rule 23 Class Action Claims (DN 58) is **STAYED**.

**Thomas B. Russell, Senior Judge**
**United States District Court**

October 22, 2020

cc: counsel