IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO.: 5:19-CV-105-TBR

**DEVAN JONES and all others**     **PLAINTIFF**
**similarly situated,**

**V.**

**H&J RESTAURANTS, LLC d/b/a**     **DEFENDANT**
**TOKYO HIBACHI,**

**MEMORANDUM OPINION & ORDER**

Before the Court is the parties' Joint Renewed Motion for Approval of Settlement and for Dismissal of Rule 23 Claims, DN 63. The motion is GRANTED. Accordingly, the Motion to Voluntarily Dismiss Rule 23 Class Claims, DN 58, is GRANTED. The Motion for Leave to Amend Complaint, DN 43, is DENIED as moot. The Motion to Certify Class, Appoint Class Counsel, and Issue Class Notice, DN 52, is DENIED as moot. The Joint Motion to Extend Deadlines, DN 54, is DENIED as moot.

    **I.**      **Background and Procedural Posture**

Plaintiff Devan Jones initiated the instant action seeking allegedly unpaid wages from employer H&J Restaurants, LLC under the Fair Labor Standards Act ("FLSA") and the Kentucky Wages an Hours Act ("KWHA"). (DN 1). Plaintiff asserted the FLSA claims on her own behalf and on behalf of a putative collective class. *Id*. Plaintiff asserted the KWHA state law claims on her own behalf and on behalf of a putative Rule 23 class. *Id*. Thereafter, Plaintiff moved the Court to conditionally certify a collective class with respect to the FLSA claims pursuant to 29 U.S.C. § 216(b). (DN 13). The Court granted conditional certification of the collective class, defining the

class as "[a]ll current and former servers employed by Defendant at its Tokyo Hibachi Restaurant in Paducah, Kentucky any time since 7/22/2016." (DN 22).

Before the Court now is the parties' Joint Renewed Motion for Approval of Settlement and for Dismissal of Rule 23 Claims, DN 63. The parties earlier submitted a Joint Motion for Approval of Fair Labor Standards Act Settlement and Plaintiff's Unopposed Motion to Voluntarily Dismiss Rule 23 Class Claims, DN 58. The Court responded to the parties' earlier motion (DN 58) by denying the motion for approval of the settlement agreement and staying the motion for voluntary dismissal of the Rule 23 class claims. (DN 59).

In its opinion and order addressing the parties' prior joint motion for settlement approval, the Court raised various issues with the original settlement agreement. *Id*. First, it was unclear whether the parties intended to include 41 plaintiffs or 43 plaintiffs in the settlement. The Court instructed that "[t]he parties need to clarify whether there are 41 or 43 plaintiffs in the settlement, briefly explain why it is proper to include the individuals included, and if relevant, briefly explain why it is proper to exclude any individuals excluded." (DN 59 at 10). Second, the Court found that the confidentiality provision in the settlement agreement was against the public interest. On that point, the Court stated that "[t]he confidentiality provision in the settlement agreement here would aggravate full enforcement of the FLSA." *Id*. at 13. Third, the Court found that the release provisions in the settlement agreement were overbroad, primarily because the agreement included a release of state law claims even though the agreement was a purported settlement of FLSA claims only. *Id*. at 13-15. The Court declined to approve of the release provisions as they stood, stating:

> At issue here is a collective action settlement alone. The Court cannot approve of the settlement agreement releasing Defendant of liability to claimants for unrecovered losses under state law because the settlement agreement is a collective action settlement aimed at settling amounts recoverable under the FLSA. If claimants are entitled to any separate or additional recovery pursuant to state law wage and hour claims, it appears to the Court that it is unfair and unreasonable to hinder claimants' rights to later raise those claims. In other

>words, to the extent the federal and state law claims do not overlap, the Court does not now find that the settlement agreement can require the opt-in plaintiffs to release those state law claims absent plaintiffs' express consent. The Court understands that plaintiffs may not be entitled to any separate or additional recovery based on the same facts grounding the FLSA claims, but the parties have not made this sufficiently clear. Accordingly, the Court requests further briefing on this issue should the parties move for approval of a revised settlement agreement.

*Id*. at 14-15. The final issue the Court identified was that plaintiff's counsel did not provide enough information regarding attorneys' fees. *Id*. at 16-17. Plaintiff's counsel provided totals for fees and expenses incurred, but counsel did not provide the Court with information on hours worked or the rates charged. *Id*. at 17. Thus, the Court stated that it could not "approve of the attorneys' fees award without further detail from plaintiff's counsel regarding hours worked . . . the Court requests more detailed billing information if a revised settlement agreement is submitted for approval." *Id*. The parties responded to the Court's concerns in their renewed motion and revised settlement agreement, for which they now seek approval. (DN 63). The parties have also renewed their motion for dismissal of the putative Rule 23 class's state law claims. The Court addresses the issues below.

## II.    The FLSA Collective Action Settlement

Claims for back wages under the FLSA may be settled upon district court approval. *O'Bryant v. ABC Phones of North Carolina, Inc.*, No. 2:19-cv-02378, 2020 WL 4493157 at \*6 (W.D. Tenn. Aug. 4, 2020) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)). "Pursuant [to] the FLSA's statutory requirements, in an FLSA collective action case, a court will grant a motion for settlement approval only after finding that: (1) the opt-in plaintiffs are 'similarly situated'; (2) the opt-in plaintiffs have properly filed written consents with the court; and (3) the settlement is 'a fair and reasonable resolution of a bona fide dispute.'" *Id*. at \*8 (first citing 29 U.S.C. § 216(b); then citing *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006); and then citing *Lynn's*, 679 F.2d at 1353)).

This Court previously found that the parties' settlement agreement satisfied the first requirement—that the plaintiffs are similarly situated. (DN 59 at 2-9). The parties' revised settlement agreement has not been modified in any way that affects that finding. Thus, the Court is satisfied that the revised settlement agreement satisfies the first requirement—the plaintiffs are similarly situated. The following discussion reconsiders the second and third requirements under the revised settlement agreement.

### a. Second Requirement: Opt-in Plaintiffs' Written Consents

#### i. Legal Standards

In addition to finding the claimants similarly situated, the Court must also ensure that the claimants have filed written consents with the court. *O'Bryant*, 2020 WL 4493157 at \*8, \*10-11 (citations omitted). "The FLSA requires that, to opt into a collective action, an individual must file a written consent with the court." *Id*. at \*10 (citing *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013)). While merely endorsing a check after a settlement agreement has been reached will not constitute opting in, filing an express, written consent as directed by the court is generally enough. *Id*. at \*10-11 (collecting cases).

#### ii. Discussion

Forty-three individuals have filed written notices of consent with the Court. Because of a discrepancy in the parties' earlier motion seeking approval of the original settlement agreement (DN 58-1 at 2) and the parties' original settlement agreement itself (DN 58-2 at 1) it was unclear whether the parties intended to include 41 or 43 plaintiffs in the settlement. The Court requested that the parties address the issue. (DN 59 at 10). In their motion now before the Court, the parties state that there are 43 opt-in plaintiffs, and that the earlier reference to 41 plaintiffs was an error. (DN 63 at 2). Given this clarification, the Court is satisfied that the second element required for

settlement approval is met. The 43 individuals who have filed written consents with the Court are included in the parties' settlement agreement.

### b. Third Requirement: The Settlement is a Fair and Reasonable Resolution of a Bona Fide Dispute

#### i. Legal Standards

To approve a collective class's settlement agreement under the FLSA, the court must ensure the agreement is a fair and reasonable resolution of a bona fide dispute. *O'Bryant*, 2020 WL 4493157 at *8 (citations omitted). "'A bona fide dispute exists when there are legitimate questions about "the existence and extent of defendant's FLSA liability."'" *Id*. at *7 (quoting *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F.Supp.3d 1164, 1172 (S.D. Cal. 2016)). "Typically, Courts regard the adversarial nature of a litigated FLSA case to be an adequate guarantor of fairness." *Kauffman v. U-Haul Int'l, Inc.*, No. 5:16-cv-04580, 2019 WL 1785453, at *2 (E.D. Pa. Apr. 24, 2019). Simply, the settlement must represent a fair compromise of genuinely disputed wage-related claims. *O'Bryant*, 2020 WL 4493157 at *7 (citing *Alvarez v. BI Inc.*, No. 16-2705. 2020 WL 1694294, at *4 (E.D. Pa. Apr. 6, 2020)).

Courts in this Circuit have assessed whether a settlement agreement in a collective action is fair and reasonable using the same factors applied in assessing whether a settlement agreement in a Rule 23 class action is fair and reasonable. *See O'Bryant*, 2020 WL 4493157 at *7; *see also Mitcham v. Intrepid U.S.A., Inc.*, No. 3:17-CV-703-CHB, 2019 WL 5496023, at *2 (W.D. Ky. May 28, 2019). Those factors include:

> (1) the risk of fraud or collusion, (2) the complexity, expense and likely duration of the litigation, (3) the amount of discovery engaged in by the parties, (4) the likelihood of success on the merits, (5) the opinions of class counsel and class representatives, (6) the reaction of absent class members, and (7) the public interest.

*O'Bryant*, 2020 WL 4493157 at *7 (citing *Does 1-2 v. Déjà Vu Services, Inc.*, 925 F.3d 886, 894-95 (6th Cir. 2019)).

In its earlier opinion, the Court considered the seven factors above in addition to the claimants' potential recovery, the settlement agreement's release provisions, attorneys' fees, and the parties' designation of a cy pres beneficiary. (DN 59 at 10-18). The Court found that the original settlement agreement's confidentiality provision was against the public interest, that its release provisions were overbroad, and that its attorneys' fees award could not be deemed reasonable without more information. *Id*. The parties have addressed these issues satisfactorily in their renewed motion and revised settlement agreement. Each of these points is discussed below. Because the revised agreement remains unchanged with respect to the other considerations, the Court's previous findings on the other factors stand.

### ii. Discussion

Courts in this Circuit reason that settlement is often in the public interest because it puts an end to what are sometimes complex and unpredictable cases and because settlement promotes judicial economy. *Does 1-2*, 925 F.3d at 899; *Ware v. CKF Enters., Inc.*, No. 5:19-183-DCR, 2020 WL 2441415, at *14 (E.D. Ky. May 12, 2020). However, settlement may conflict with the public interest where "full enforcement of the FLSA" would ensure that employers comply with the statute. *Ware,* 2020 WL 2441415, at *14.

In evaluating the original settlement agreement, the Court found that the included confidentiality provision was against the public interest because it could aggravate full enforcement of the FLSA. (DN 59 at 12-13). In their motion, the parties state that the "revised Settlement Agreement makes no reference to any confidentiality provision, nor does it permit a party to seek the Court's enforcement of a confidentiality provision." (DN 63 at 2). Review of the

6

revised agreement demonstrates that indeed, no confidentiality provision appears in the revised agreement. (DN 63-1). This modification alleviates the Court's concern as to the public interest. Therefore, the Court turns to the release provisions.

"A settlement agreement that includes an overbroad release provision may be found unfair and unreasonable." *O'Bryant*, 2020 WL 4493157 at *14 (citing *Selk*, 159 F.Supp.3d at 1178). With respect to the original settlement agreement, the Court found that the release provisions were overbroad, as they included release for state law claims even though the settlement was a collective action settlement of the FLSA claims. (DN 59 at 13-15). The parties submit in their renewed motion that they have narrowed the scope of the release provisions. (DN 63 at 2). Specifically, they state the following:

> The Parties Revised Settlement Agreement limits Plaintiffs' release to only FLSA claims. The Revised Settlement Agreement does reflect that Plaintiffs' wage and damages recovery is based on pay and time data over a five-year time period dating back from the filing of the Complaint. Defendants produced time and pay data covering a five-year time period, as that is the time period covered by Plaintiffs' state law claims that were asserted in this litigation. Using this data covering five years, the Parties' negotiated the settlement at hand.

*Id*. Again here, review of the revised agreement confirms these modifications. The Court is satisfied that its concerns regarding the overbroad release provisions in the original settlement agreement have been properly remedied.

The final issue in evaluating the settlement agreement's fairness is the reasonableness of the attorneys' fees award. "When a proposed settlement of FLSA claims includes the payment of attorneys' fees, the court must assess the reasonableness of the fee award." *O'Bryant*, 2020 WL 4493157 at *15 (first citing *Hawkins v. Accurate Nursing Servs., Inc.*, No. 5:19-cv-1572, 2020 WL 1031530, at *1 (N.D. Ohio Mar. 3, 2020); and then citing 29 U.S.C. § 216(b)). A district court may consider a variety of factors in determining the reasonableness of the fee award, including the value rendered to the collective class, the complexity of litigation, and the value of plaintiff

counsel's services on an hourly basis. *Id*. Courts may employ the lodestar method or the percentage-of-recovery method in determining the reasonableness of attorneys' fees. *Id*. (first citing *Smith v. Serv. Master Corp*, 592 F. App'x 363, 369 (6th Cir. 2014); then citing *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 515-16 (6th Cir. 1993); and then citing *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 WL 6310376, at *5 (S.D. Ohio Nov. 25, 2019)). Further, as recognized in the parties' motion for approval of the original settlement agreement, "[t]he party seeking attorneys' fees has the burden to prove that its request for fees is reasonable by 'submitting evidence supporting the hours worked and the rates claimed.'" (DN 58-1 at 7) (citing *Consumers Produce, Inc. v. R. Family Market*, No. 4:08-cv-70, 2009 WL 2351642, at *2 (N.D. Ohio July 28, 2009)).

In their earlier motion seeking approval of the original settlement agreement, the parties contended that "hourly rates charged by Plaintiffs' counsel and the number of hours worked are reasonable, based on the prevailing market rates, and based on the successful litigation of similar cases." (DN 58-1 at 8). However, the Court did not have any evidence of rates charged or hours billed. Thus, while the Court was able to view the reasonableness of the attorneys' fees award under the percentage-of-recovery method, it was unable to evaluate reasonableness of the attorneys' fees award under the lodestar method. Consequently, the Court requested more detailed billing information. (DN 59 at 17). Plaintiff's counsel has now provided more detailed billing information for *in camera* review. Although the parties did not initially address which method— percentage-of-recovery or lodestar—was most appropriate in this case, the parties now submit that the Court should apply the percentage-of-recovery method. (DN 63 at 3, n.1) ("[T]he percentage-of-recovery method . . . is frequently approved by court in the Sixth Circuit in FLSA litigation."). Upon further review, and contrary to its former conclusion on this issue, the Court agrees that the

percentage-of-recovery method, and not the lodestar method, is most appropriate for determining the reasonableness of the fee award in this case.

"The lodestar and the percentage of recovery methods each have distinct attributes suiting them to particular types of cases . . . a court making or approving a fee award should determine what sort of action the court is adjudicating and then primarily rely on the corresponding method of awarding fees." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821 (3rd Cir. 1995). "Courts generally regard the lodestar method, which uses the number of hours reasonably expended as its starting point, as the appropriate method in statutory fee shifting cases." *Id*. However, "[c]ourts use the percentage of recovery method in common fund cases on the theory that the class would be unjustly enriched if it did not compensate the counsel responsible for generating the valuable fund bestowed on the class." *Id*. (citing *Ford Motor Credit Co. v. Shaw*, 108 F.R.D. 218, 250 (M.D. Ala. 1985)). Although the FLSA includes a fee-shifting provision, 29 U.S.C. § 216(b), the fee award in the collective action settlement here may be characterized as a common fund award. Thus, it may be sound to apply either approach. The Sixth Circuit has recognized in the similar case of class action settlements that "[b]ecause 'each method has its respective advantages and drawbacks,' district courts have discretion in some contexts to choose the more appropriate method for a particular case." *Linneman v. Vita-Mix Corp.*, 970 F.3d 621, 624 (6th Cir. 2020) (citing *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)). "[I]t is necessary that district courts be permitted to select the more appropriate method for calculating attorney's fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." *Rawlings*, 9 F.3d at 516. In *Salinas v. U.S. Xpress Enters.*, the United States District Court for the Eastern District of Tennessee recognized that "[t]he FLSA contains a fee-shifting provision that provides that the prevailing

party shall recover reasonable attorney's fees and litigation costs." No.: 1:13-cv-00245-TRM-SKL, 2018 WL 1477127, at *8 (E.D. Tenn. March 8, 2018) (citing 29 U.S.C. § 216(b)). Still, the court held that "in cases where statutory attorney's fees attach, such as the FLSA, the percentage-of-recovery doctrine is still the preferred manner to calculate attorney's fees." *Id*. at *9 (citations omitted). The *Salinas* court also found that "[t]he percentage-of-recovery method 'is the prevailing methodology used by courts [. . .] for wage-and-hour cases.'" *Id*. at 8 (citing *Bredbenner v. Liberty Travel, Inc.*, Nos. 09–905 (MF), 09–1248(MF), 09–4587(MF), 2011 WL 1344745, at *19 (D. N.J. April 8, 2011)).

"District courts have the discretion to select the particular method of calculation, but must articulate the 'reasons for "adopting a particular methodology and the factors considered in arriving at the fee."'" *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 280 (6th Cir. 2016) (quoting *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir.2009)). Like the district court in *Salinas*, this Court also exercises its discretion to apply the percentage-of recovery method of evaluating the reasonableness of the attorneys' fees award in the collective action settlement at issue for several reasons. First, the parties have urged the Court to apply the percentage-of-recovery method. (DN 63 at 3, n.1). Second, applying the percentage-of-recovery method promotes judicial economy. *See Rawlings*, 9 F.3d at 516-517 (citations omitted) ("The percentage of the fund method has a number of advantages: it is easy to calculate; it establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery; and it encourages early settlement, which avoids protracted litigation . . . the lodestar method has been criticized for being too time-consuming of scarce judicial resources . . . District courts must pore over time sheets, arrive at a reasonable hourly rate, and consider numerous factors in deciding whether to award a multiplier. With the emphasis it places on the number of hours expended by counsel rather

10

than the results obtained, it also provides incentives for overbilling and the avoidance of early settlement."). Finally, plaintiff's counsel has agreed to settle for about half of the fees and expenses actually incurred, helping assure the Court that plaintiff's counsel is not attempting to take advantage of collective class plaintiffs by settling too early or claiming an amount of the common fund disproportionate to counsel's work in the case. (DN 63 at 3, n.1).

Here, the parties request approval of $55,000 in attorneys' fees and expenses, relative to a total gross settlement amount of $163,000. (DN 63-1 at 2-3). Thus, the fees and expenses award represents about 33.74% of the settlement fund. As the parties explain in their motion, district courts in this Circuit have found a one-third fee award to be appropriate in similar cases. *See Ware*, 2020 WL 2441415, at *16 (collecting cases) ("[C]ourts within this circuit have found one-third common fund attorney's fee awards to be reasonable in similar complex failure-to-pay-overtime cases."); *see also Swigart v. Fifth Third Bank*, No. 1:11–cv–88, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) ("An award of 33% of the total settlement fund is well within the range of fees requested in class and collective actions in Ohio federal district courts."). Accordingly, the Court finds that the award here is reasonable and supports finding that the parties have reached a fair and reasonable resolution of a bona fide dispute.

### c. Summary

The Court will approve of a settlement after finding that: (1) the opt-in plaintiffs are similarly situated, (2) the opt-in plaintiffs have properly filed written consents with the court, and (3) the settlement is a fair and reasonable resolution of a bona fide dispute. *O'Bryant*, 2020 WL 4493157 at *8. The Court is now satisfied that each of these requirements is met. Therefore, the parties' renewed motion for approval of the revised settlement agreement is granted.

### III. Dismissal of the Rule 23 State Law Claims

Although plaintiff moved the Court to certify a Rule 23 class (DN 52), the parties sought approval of the collective class's settlement agreement and voluntary dismissal of the putative Rule 23 class before any ruling on the Rule 23 class certification. (DN 58). The parties have now renewed plaintiff's unopposed motion to voluntarily dismiss the Rule 23 class claims without prejudice and therefore seek to dispose of the case without a class action. (DN 63 at 4).

In their original motion, the parties submitted the following:

> Federal Rule of Civil Procedure 23(e) governs the settlement, voluntary dismissal, or compromise of class action claims. Fed. R. Civ. P. 23(e). Under this rule, court approval is required when a party moves to voluntarily dismiss the claims, issues, or defenses of a certified class, or a class proposed to be certified for purposes of settlement.

(DN 58-1 at 11-12). The text of Federal Rule of Civil Procedure 23(e) reads, in relevant part, "[t]he claims, issues, or defenses of a *certified* class--or a class *proposed to be certified for the purposes of settlement*--may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e) (emphasis added). Here, the proposed Rule 23 class has neither been certified, nor has its certification been proposed for the purposes of settlement. To the contrary, the parties' motion for Rule 23 class certification was proposed for the purposes of further litigation—not for the purposes of settlement. (DN 52). Because the Rule 23 class at issue here has neither been certified nor proposed for certification for the purposes of settlement, the text of Rule 23(e) does not indicate that the voluntary dismissal sought in this case requires court approval. However, the parties state that "[t]he Sixth Circuit adopts the view that Rule 23(e) applies in a precertification context where putative class members are likely to be prejudiced." (DN 58-1 at 12) (citing *Doe v. Lexington-Fayette Urban County Gov't*, 407 F.3d 755, 764 (6th Cir. 2005)). In *Doe*, the Court considered the application of Rule 23(e) in the context of its notice requirements. 407 F.3d at 761 (citations omitted) ("Most courts have found that Rule 23(e)'s notice requirement

12

applies to putative class members as well as to certified class members."). The rationale for extending Rule 23(e) notice requirements to proposed class actions where the parties seek voluntary dismissal—and thus requiring court approval for such a dismissal—is to prevent situations where putative class members rely on proposed class actions to assert their claims and then learn after the statute of limitations has run that the action was dismissed. *Id*. at 762. As the *Doe* court explained:

> Ultimately, the general rule adopted by most federal courts that have addressed the topic is the one articulated in Newberg . . . "[M]ost requests for voluntary dismissals of representative suits are made before there has been any class ruling. Whether a voluntary dismissal in these circumstances is sought in connection with a proposed settlement of claims of the individual plaintiff only or in a nonsettlement context, most courts have stressed the need under Rule 23(e) to examine *whether any prejudice to the class will result if the dismissal of the action is allowed without class notice*."

*Id*. (quoting Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11:72 (4th ed. 2002)). The *Doe* court went on to endorse the rule that "a district court should order Rule 23(e) notice where the putative class is likely to be prejudiced by the dismissal or settlement of a class-action suit." *Id*. at 763. Thus, this Court must consider whether the potential Rule 23 class members would be prejudiced by dismissal such that notice of dismissal to those members is warranted. The parties again cite *Doe*, in addition to *Anderberg v. Masonite Corp.*, 176 F.R.D. 682, 690 (N.D. Ga. 1997), for the factors a court should consider in deciding whether to require notice to putative class members. (DN 58-1 at 12). Those factors include the degree of publicity a case has received, evidence of collusion, and the danger of dismissal having a preclusive effect on absent class members. *Id*.

With respect to a case's publicity, the *Anderberg* court explained that "absent class members may have a reliance interest in the dismissal of the class action . . . [t]his reliance interest can become a danger when the filing of a class complaint received attention by the news media."

13

176 F.R.D. at 690 (citing *Shelton v. Pargo, Inc.*, 582 F.2d 1298, 1315 (4th Cir. 1978)). Essentially, the less publicity a proposed class action receives, the less likely it is that absent, putative members will be prejudiced by dismissal of the proposed action. If such members have no knowledge of a proposed action, they are not relying on the action to resolve their claims, so its dismissal does not prejudice them. Here, the Court is not aware of any publicity the case has received. Further, no Rule 23 class was certified, so no notice of a pending Rule 23 action was ever distributed. The Court has no reason to suspect that absent Rule 23 class members are relying on the proposed class action or that they will be prejudiced by dismissal without notice. Because the court has no reason to suspect a reliance interest on behalf of absent parties, the Court is satisfied that dismissal without class notice will not result in prejudice due to publicity.

With respect to evidence of collusion, plaintiff asserts that the proposed dismissal of the class claims does not stem from a compromise with the defendant, but from a determination that the defendant probably cannot satisfy any judgment on the Rule 23 claims. (DN 58-1 at 12). As regards the preclusive effect of a dismissal, the parties state that "the putative rule 23 class members who have not joined this case may still pursue their claims, should the[y] wish." *Id*. Moreover, the parties contend that the statute of limitations period for the Rule 23 state law claim is five years, so absent class members still have time to pursue their claims if they want to. *Id*. As to the collective class members who may also be members of the Rule 23 class, the parties submit that those individuals "have already received notice of the action and have had an opportunity to join this case to recover wages owed to them." *Id*. Further, as explained in the previous section, the parties have limited the release provisions in the settlement agreement to include FLSA claims alone. Given these considerations, the Court finds that there is no evidence of collusion, nor is

there risk of a preclusive effect that requires notice of dismissal. Thus, again here, the Court is satisfied that dismissal without class notice will not result in prejudice.

For the foregoing reasons, the motion for voluntary dismissal of the Rule 23 class claims is granted without prejudice.

## IV. Conclusion

Consistent with this Opinion, it is hereby ORDERED that:

(1) The parties' Joint Renewed Motion for Approval of Settlement and for Dismissal of Rule 23 Claims, DN 63, is GRANTED.

(2) The Motion to Voluntarily Dismiss Rule 23 Class Claims, DN 58, is GRANTED. The class claims are dismissed WITHOUT PREJUDICE.

(3) The Motion for Leave to Amend Complaint, DN 43, is DENIED as moot.

(4) The Motion to Certify Class, Appoint Class Counsel, and Issue Class Notice, DN 52, is DENIED as moot.

(5) The Joint Motion to Extend Deadlines, DN 54, is DENIED as moot.

The clerk is directed to close the case.

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**

November 20, 2020

cc: counsel

15